The **MONEY STORE INVESTMENT CORPORATION** (now, Wachovia Commercial Mortgage, Inc., Its Successor in Interest), f/d/b/a First Union Small Business Capital, Appellant–Defendant,

v.

Neal A. **SUMMERS,** et al., Appellee–Plaintiff.

No. 02A03–0807–CV–384.

Court of Appeals of Indiana.

July 10, 2009.

Rehearing Denied Sept. 9, 2009.

---

452

Mark R. Galliher, Craig D. Doyle, Indianapolis, IN, Attorneys for Appellant.

G. Martin Cole, Jeremy J. Grogg, Fort Wayne, IN, Attorneys for Appellees.

## OPINION

SHARPNACK, Senior Judge.

This appeal involves issues of liens and priorities between Paula Phillips ("Phillips"), a judgment creditor and assignee of a first mortgage holder ("National City"), and The Money Store Investment Corporation, d/b/a First Union Small Business Capital ("Money Store")[1], the holder of a second mortgage, for the cost of repairs, insurance, and taxes with respect to the mortgaged property owned by Neal Summers, on a part of which Phillips has been operating a restaurant. This is the second appeal of the case and is brought by Money Store from a judgment of the trial court adding to the lien of Phillips as assignee of National City's mortgages amounts spent to repair the restaurant, insure it, and pay taxes on the mortgaged property during the pendency of the first appeal.

Money Store raises the following restated issues for our review:

I. Whether the trial court erred in granting Phillips a first priority lien on the real estate for the cost of repairs, insurance payments, and tax payments;

II. Whether the trial court erred in concluding that Money Store was personally liable to repay Phillips for the cost of repairs, insurance payments, and tax payments;

III. Whether the trial court erred in awarding Phillips prejudgment interest; and

IV. Whether the trial court erred in failing to order an accounting and an application of the restaurant's profits to Phillips' lien.

1. Money Store is now Wachovia Commercial Mortgage, Inc.

We affirm in part, reverse in part, and remand.

We begin our review of this appeal with reference to the decision of our Supreme Court in the first appeal. There, the Court summarized the facts and proceedings relevant to that decision as follows:

From 1992 to 1996, Neal Summers granted eleven mortgages on three parcels of his real estate to Fort Wayne National Bank as security for a series of loans. Three of these mortgages contained dragnet clauses.

In February 1998, Paula Phillips sued Summers and the company in which he was the sole shareholder, Mangy Moose Enterprises, Inc. Her complaint raised a dispute over the ownership of the trademark/trade name "Paula's Seafood." The parties entered into a written settlement agreement on September 21, 1999, and the suit was subsequently dismissed without prejudice.

On September 15, 2000, Summers and Mangy Moose borrowed $508,275 from the Money Store Investment Corporation d/b/a First Union Small Business Capital and granted a mortgage on the same three parcels used to secure the Fort Wayne National mortgages (to which National City succeeded), plus an additional six lots. On the same day, Mangy Moose, by Summers as president and secretary, borrowed $471,000 from Money Store, and granted a mortgage on the same real estate.

Prior to these loans, on August 30, National City sent to Money Store's title company three pay-off statements that included the daily interest. National City assured the title company that eight mortgages and two assignments of rents and leases would be released upon the proper payoff of the three loans. On September 15, National City received three payments, but one payment came up $375 short of the amount reflected on the pay-off statements. National City did not release any of the mortgages and was still owed some $4700 on Mangy Moose's overdrawn checking account.

Phillips filed a motion to enforce the settlement agreement on August 10, 2001. Just over a month later, Money Store filed a complaint for foreclosure and appointment of a receiver. On February 5, 2002, the trial court in the Phillips' action found that Summers and Mangy Moose had failed to comply with an earlier order and granted Phillips a $205,700 judgment.

Phillips then purchased National City's nine mortgages and two assignments of rents and leases, and National City assigned all of its interest to Phillips. In March 2002, Phillips filed a complaint to foreclose these mortgages, and also moved to intervene in the Money Store foreclosure action. Both Phillips and Money Store moved for summary judgment.

The trial court entered its judgment and decree foreclosing both Phillips' and Money Store's mortgages. It held that "dragnet" clauses contained in three of the mortgages assigned to Phillips secured "all debts or obligations owed to Paula Phillips by Summers," which included Phillips' judgment lien against Summers, Mangy Moose's overdrawn checking account, collection fees, attorneys fees, and interest. It granted Phillips priority over Money Store on the three Summers' lots used as collateral in the mortgages assigned to Phillips.

The Court of Appeals affirmed, holding that "the mortgage dragnet clauses support[ ] the trial court's conclusion that the monetary judgment resulting from Summers' failure to comply with his written settlement agreement was, after Phillips acquired the mortgage

through assignment by National City, 'secured by' the dragnet mortgages." *The Money Store Investment Corp. v. Summers*, 822 N.E.2d 223, 229 (Ind.Ct. App.2005) vacated. We granted transfer.

*Money Store Inv. Corp. v. Summers*, 849 N.E.2d 544, 546–47 (Ind.2006) (citations omitted).

The Court went on to conclude as follows:

> While it is true that Phillips stepped into the shoes of the mortgagee, this entitled her to collect debts secured in accordance with the terms of the mortgages, not her judgment lien. The debts in this case were limited to the $375 short payment on the loan payoff and the $4700 overdrawn checking account, plus interest, collection costs, and attorney's fees. We reverse the trial court's grant of priority to Phillips over Money Store on the lots in question.

*Id.* at 548. After the decision of our Supreme Court, Phillips and Money Store stood in the following order of priority: 1) Phillips as assignee of the National City mortgages for the amounts as limited by the Supreme Court, including $5,181.25 for the debt from Summers plus interest and attorneys fees; 2) Money Store for its foreclosure judgment, including $569,470.28 plus interest and attorneys fees; and 3) Phillips for her $205,700 judgment against Summers.

We turn now to this appeal. The primary facts relevant to this appeal concern actions that occurred for the most part between the judgment of foreclosure by the trial court on December 4, 2003, and the affirmance of that judgment by this court on April 18, 2005. The Indiana Supreme Court granted transfer on August 11, 2005, and handed down its previously referenced opinion on June 27, 2006.

The dispute between Phillips and Summers that led to her judgment against him concerned a restaurant that Phillips had operated for some years in part of the buildings on the subject property. When she began operations, the property was owned by someone other than Summers. After Summers acquired the property, he became more and more involved in the operation of the restaurant, which eventually led to Phillips leaving and suing Summers and Mangy Moose, a corporation formed by Summers.

Phillips obtained her money judgment against Summers and Mangy Moose on February 5, 2002. By that time, Summers had apparently left the country for New Zealand, and Money Store had filed to foreclose and have a receiver appointed. The receivership was never consummated, but Don Young operated the restaurant on the premises from around March 2002 until August 2003, when he abandoned the project and the restaurant was closed. **(Tr. 168–70).**

Left empty, the one-hundred-year-old property was vandalized and burglarized. Summers was gone and Money Store did not qualify a receiver or enter the property to secure its interests. Watching the property deteriorate, Phillips eventually decided to take remedial action to secure it.

Before beginning repairs or paying taxes, Phillips and her lawyer had several telephone conferences with Money Store representatives regarding the deteriorating condition of the property and the need for repairs. The Money Store representatives agreed that something needed to be done and indicated that Phillips should go ahead. The Money Store people did not agree to pay for anything, or that the costs would be a part of Phillips' mortgage claim. **(Tr. 195–198)**

Because Phillips lacked the financial ability to make the necessary repairs to the restaurant, she turned to Frank Casagrande, Thomas Sokolik, and their limited liability partnership T & F, LLP. **(Tr. 20).** At Phillips' request, T & F obtained a $150,000 loan to begin the process of repairing the restaurant. **(Tr. 20).** T & F provided an additional $60,000. **(Tr. 21).** Although there was no written contract, Phillips agreed to repay T & F the $210,000 spent on the restaurant repairs. **(Tr. 74).** Phillips, Casagrande, and Sokolik subsequently formed 412323, LLC, to operate the restaurant and a seafood market upon completion of the repairs. **(Tr. 18).** The work done included repairs to the leaking roof, broken windows, floors, unstable structure and foundation, termite damage, water damaged ceilings, faulty electrical and HVAC systems, unusable plumbing, and damaged drywall. **(Tr. 24–30).** The bulk of the repair work was done in 2004. **(Tr. 70).** Paula's Restaurant opened for business on November 30, 2004. **(Tr. 70).**

On January 4, 2006, T & F, along with Craftsman Building Services, the contractor responsible for much of the repair, and 412323, filed a complaint against Phillips asserting a mechanic's lien on the real estate and an unjust enrichment claim against Phillips. The trial court dismissed the complaint on March 30, 2006, for failure to state a claim pursuant to Trial Rule 12(B)(6) because Phillips was not an owner of the real estate pursuant to the statutory definition and thus had no lienable interest in it.

Also during the pendency of the first appeal, Phillips learned that several of the lots composing the real estate had been sold at a tax sale because neither Summers nor Money Store had paid the taxes on them. With the assistance of T & F and 412323, Phillips redeemed several of the lots as well as certain outlots. She also paid the annual property taxes on all of the parcels after she redeemed them. In addition, Phillips paid the premiums for commercial property and casualty insurance coverage on the property.

In March 2005, a month following this court's affirmance of the trial court in the first appeal, Phillips filed a Petition for the Recovery of Property Tax Payments, Insurance Payments, Utility Payments, and Payments for Necessary Repairs to the Mortgaged Property. The trial court decided to defer action on the petition until the appeal was concluded. Phillips subsequently filed two petitions for post-judgment attorney fees on appeal. Five months later, the Indiana Supreme Court granted transfer in *Money Store I.* In June 2006, the Supreme Court issued its opinion reversing the trial court's grant of priority to Phillips over Money Store as to her judgment against Summers and Mangy Moose. *See The Money Store Investment Corporation v. Summers,* 849 N.E.2d 544 (Ind.2006). At the August 2007 hearing on Phillips' March 2005 petitions, Phillips introduced into evidence invoices and copies of checks paid for the repairs to the building, insurance premiums, taxes, and attorney fees. Also at the hearing, Phillips testified that insurance premium payments were for business and commercial liability insurance, not for health or personal injury.

Since the opening of the restaurant in November 2004, the restaurant has taken in gross revenues between $1,000,000 and $1,250,000 per year. **(Tr. 94).** These revenues have paid all of the restaurant's ordinary operating expenses. **(Tr. 95).** In addition, the restaurant has paid Phillips a salary of over $30,000 per year and had also paid $500 per month for her health insurance. **(Tr. 155, 149).** Casagrande and Sokolik each receive a salary of

$13,000 per year. (**Tr. 156**). Further, the restaurant has been paying $1,500 per month on the bank loan that funded the renovations and has paid $15,000 back to T & F. (**Tr. 146, 157**). Phillips, Casagrande, and Sokolik have also each received a $5,000 dividend from the restaurant. (**Tr. 149**).

In May 2008, the trial court issued a 56–page judgment, which reviewed in detail the facts of the case as well as all of the invoices, checks, and evidence admitted into evidence at the hearing. In essence, the trial court found that Phillips was entitled to recover, in addition to the amounts due with respect to the National City mortgages as held by the Supreme Court, and with the same priority, the expenditures for repairs (excluding those disallowed by the trial court), taxes, and insurance. The decision of the trial court established the following priorities as to the proceeds of foreclosure sale of the property: 1) Phillips as to the balance due on the National City mortgages, including interest and attorney fees and the costs of repair, taxes, and insurance, approximately $360,657.65 plus interest and attorneys fees; 2) Money Store for its foreclosure judgment, including $569,470.28 plus interest and attorneys fees; and 3) Phillips for her $205,700 judgment against Summers.

In addition, the trial court found Money Store liable to Phillips as follows:

IT IS ORDERED, ADJUDGED AND DECREED THAT, taking all of the aforementioned amounts into consideration, Paula is awarded a total recovery and judgment from the Money Store of $355,467.40 for total amounts expended on the Real Estate, including attorney fees, plus total accrued interest, all of which is secured by a first priority lien on the Real Estate.

Appellant's App. at 116. Money Store appeals. Our discussion of the issues includes additional facts.

## Discussion and Decision

At the outset we note the parties agree that the trial court's judgment in this case supplements rather than replaces the court's December 2003 judgment foreclosing both Phillips' and Money Store's mortgages. The parties' mortgages are still foreclosed, and the real estate should proceed to sheriff's sale following the accounting ordered here on remand.

 We now turn to the merits of the case. The trial court entered findings and conclusions sua sponte. Sua sponte findings control only the issues they cover. *Olcott Intern. & Co., Inc. v. Micro Data Base Systems, Inc.*, 793 N.E.2d 1063, 1071 (Ind.Ct.App.2003), *trans. denied.* We apply the following two-tiered standard of review to sua sponte findings and conclusions: whether the evidence supports the findings and whether the findings support the judgment. *Id.* Findings and conclusions will be set aside only when they are clearly erroneous. *Id.* A judgment is clearly erroneous when a review of the record leaves us with a firm conviction that a mistake has been made. *Id.* We consider only the evidence favorable to the judgment and all reasonable inferences flowing therefrom, and we will neither reweigh the evidence nor judge the credibility of witnesses. *Id.* A general judgment standard of review controls as to the issues upon which there are no findings. *Id.* In such a case, the judgment will be affirmed if it can be sustained on any legal theory supported by the evidence. *Id.*

### I. First Priority Lien

### A. Implied Promise to Repay

 Money Store contends that the trial court erred in awarding Phillips a first

priority lien on the real estate. Specifically, Money Store's first argument is that the trial court erred in awarding the lien because Phillips "did not pay one penny of the expenses she now seeks to recover." Appellant's Br. at 9–10. Money Store points out that it was Phillips' partners who paid the expenses, and Phillips is under no written contractual obligation to repay them.

 Where there is no express contract, the right to recover may rest upon an implied contract or an implied promise to pay. *Cole v. Cole,* 517 N.E.2d 1248, 1250 (Ind.Ct.App.1988). Such a contract may be inferred from the conduct, situation, or material relations of the parties and enforced by law. *Id.* The intention to pay and the expectation of compensation may be inferred from the conduct of the parties and where equity, justice, and fair dealing require compensation. *Id.*

Here, our review of the transcript reveals that Phillips requested help from Casagrande and Sokolik. The two men borrowed money and paid Phillips' expenses for her, and she has already begun to repay them. This evidence supports the trial court's finding and conclusion that Phillips is the proper party to seek reimbursement for the money spent protecting and preserving her liens on the real estate and outlots because she agreed to be liable and to repay Casagrande and Sokolik. *See Miller v. Curry,* 124 Ind. 48, 24 N.E. 219 (1890).

### B. Repairs

 Money Store also argues that the trial court erred in granting Phillips a first priority lien because Phillips' work on the restaurant constituted improvements rather than repairs. As a general rule, a mortgagee-in-possession is bound to exercise the same care and supervision over the mortgaged property that a prudent man would exercise over his own property.

*Wise v. Layman,* 197 Ind. 393, 150 N.E. 368, 371 (1926). It is also well settled that a mortgagee-in-possession is entitled to be reimbursed for reasonable and necessary repairs made on the mortgaged property to keep the property from deteriorating and to maintain the property in rental condition. *Id.* What are reasonable and necessary repairs depends upon the particular circumstances of each case. *Id.*

Here, after speaking with Money Store's counsel and a Money Store representative and receiving Money Store's acquiescence, Phillips began making repairs at the restaurant. Specifically, Phillips repaired the restaurant's leaky roof, broken windows, damaged floors, unstable structure and foundation; water damaged ceilings, faulty electrical and HVAC systems, unusable plumbing, and damaged drywall for the purpose of re-opening the restaurant. The trial court carefully reviewed the evidence of the expenditures and determined some to be necessary for the repair of the restaurant, and some not to be necessary for such purpose. Based upon the facts and circumstances of this case, we find that the evidence supports the trial courts' finding and conclusion that some of this work constituted reasonable and necessary repairs to keep the property from deteriorating and to maintain the property in rental condition. The evidence also supports the trial court's finding and conclusion that Money Store was put on notice that Paula intended to repair the property so that it would be returned to a condition where it could sustain an operable restaurant and seafood market. The trial court did not err in awarding Phillips a first priority lien on the real estate with respect to the expenditures for necessary repairs.

### C. Res Judicata

 Money Store also argues that the dismissal of the previous mechanic's lien

action filed by T & F and Craftsman Building Services, Inc., barred Phillips from securing a priority lien in this case. Specifically, Money Store appears to argue that the doctrine of res judicata bars Phillips' claim.

The doctrine of res judicata bars litigating a claim after a final judgment has been rendered in a prior action involving the same claim between the same parties or their privies. *Richter v. Asbestos Insulating & Roofing*, 790 N.E.2d 1000, 1002 (Ind.Ct.App.2003). The principle behind the doctrine is the prevention of repetitive litigation of the same dispute. *Id.* A claim is barred by the doctrine of res judicata if the following four requirements are met: 1) the former judgment must have been rendered by a court of competent jurisdiction; 2) the former judgment must have been rendered on the merits; 3) the matter now in issue was, or could have been, determined in the prior action; and 4) the controversy adjudicated in the prior action must have been between the same parties to the present suit or their privies. *Id.* Further, a dismissal with prejudice is conclusive of the rights of the parties and is res judicata as to any questions that might have been litigated. *Id.*

Here, in the mechanic's lien case, the trial court determined only that Phillips was not an owner of the property pursuant to the statutory definition and therefore had no lienable interest in it. However, in the present case, Phillips' claims are based on her status as a mortgagee-in-possession. Because the matter now in issue could not have been determined in the prior action, Phillips' claims are not barred by the doctrine of res judicata.

### D. Insurance Premiums

Money Store also argues that Phillips is not entitled to include her insurance premium payments in her first priority lien. However, our review of the evidence reveals that the mortgages require insurance, and neither Money Store nor Summers provided it. Phillips therefore provided commercial property and casualty coverage. The coverage is recoverable as part of the secured indebtedness under a mortgage. *See Hosford v. Johnson*, 74 Ind. 479, 481–82 (1881). The trial court found that Phillips paid insurance premiums for the commercial property casualty component of the coverage. Because there is evidence to support this finding, we will not reweigh it and find no error.

### II. Personal Liability

Money Store further contends that the trial court erred in holding it personally liable and ordering it to "reimburse" Phillips $355,476.40 for "total amounts expended on the Real Estate . . . all of which is secured by a first priority lien on the Real Estate." Appellant's App. at 116. Money Store is correct.

First, Phillips' complaint did not petition the court to order Money Store to reimburse her. Rather, she petitioned for an in rem judgment against the mortgaged real estate. This court has previously explained that a judgment cannot stand without a pleading to support it. *Cromer v. Sefton*, 471 N.E.2d 700, 705 (Ind.Ct.App. 1984). Further, neither Phillips' final argument to the trial court nor her proposed findings of fact and conclusions of law requested such relief.

The $355,467.40 money judgment against Money Store to Phillips consists of the totals of the in rem judgment Phillips obtained against Summers and Mangy Moose in December 2003 on the assigned mortgages to the extent affirmed by the Indiana Supreme Court; the amounts paid for real property taxes and redemptions; the amount paid for insurance premiums; the amount paid for repairs; the amount

for attorney fees in the first appeal, and an amount for attorney fees in the trial proceedings on appeal here.

There is no basis for making Money Store liable to pay a judgment entered against Summers in 2003.

Further, Money Store correctly points out there was no evidence of a written or oral agreement presented at trial that could justify requiring Money Store to reimburse Phillips the $355,476.40. There is nothing to suggest that Money Store agreed to pay the real property taxes. In the absence of some agreement, it is appropriate, as we have concluded, to allow priority as to foreclosure sale proceeds but not to impose personal liability to Phillips on Money Store.

It is also the case that in the absence of an agreement, Money Store has no liability to Phillips for Phillips' attorney fees. *See Fackler v. Powell*, 891 N.E.2d 1091, 1098 (Ind.Ct.App.2008), *trans. denied* (stating that Indiana adheres to the American Rule with respect to the payment of attorney fees, which requires each party to pay his or her own attorney fees absent an agreement between the parties, statutory authority, or rule to the contrary). Phillips is entitled to recover attorney fees by virtue of the agreements for same in the mortgages assigned to her and for priority as to foreclosure sale proceeds. There is no agreement by Money Store to pay Phillips' attorney fees.

Money Store's acquiescence to Phillips' work does not constitute an agreement to pay for it. In the absence of any such agreement, Money Store has no obligation to reimburse Phillips.

For the foregoing reasons, we reverse the part of the judgment that holds Money Store personally liable to Phillips.

### III. Prejudgment Interest

■■■ In addition, Money Store argues that the trial court erred in including prejudgment interest in the lien where Phillips did not request it. Phillips, on the other hand contends that her request for "all other just and proper relief" included the award of prejudgment interest. Phillips is correct.

■■■■ The award of prejudgment interest is founded solely upon the theory that there has been a deprivation of the use of money or its equivalent and that unless interest is added the injured party cannot be fully compensated for the loss suffered. *Indiana Insurance Company v. Sentry Insurance Company*, 437 N.E.2d 1381, 1390 (Ind.Ct.App.1982). Interest is not recoverable as interest but as additional damages to accomplish full compensation. *Id.* The statutory interest rate is used only as a measure for the value of the lost use of property. *Id.*

In *Sentry*, Sentry Insurance requested "any further relief which the court shall deem equitable" in its cross claim. *Id.* This court found that prejudgment interest is "further proper relief" once the trial court determines that the prerequisites for prejudgment interest existed. *Id.* Because Indiana Insurance did not question the existence of the prerequisites for prejudgment interest, we did not discuss them. *Id.* Here, as in *Sentry*, prejudgment interest is "other just and proper relief" once the trial court determines that the prerequisites for prejudgment interest exist. Also as in *Sentry*, because Money Store did not question the existence of the prerequisites for prejudgment interest, we need not discuss them. The trial court did not err in including prejudgment interest in the lien.

### IV. Accounting

Lastly, Money Store argues that the trial court erred in failing to order an accounting and an application of the restaurant's profits to Phillips' first priority lien for the cost of repairs, insurance payments, and tax payments. In support of her response that she has no obligation to account for any rents or profits from her use of the real estate, Phillips directs us to *Adkins v. Hudson,* 19 Ind. 392 (1862) and *White v. Redenbaugh,* 41 Ind.App. 580, 82 N.E. 110 (1907). However, *Adkins* is not apposite because it was an action under the occupying claimants statute[2] where the occupying claimant is not liable to the true owner for the value of the rent attributable solely to improvements made by the occupying claimant in good faith. *White* is not apposite either. Therein, an absolute deed to White by Redenbaugh was held to be a mortgage. Because Redenbaugh remained in possession, White had no claim to Redenbaugh's rents and profits. It has nothing to do with a claim that a mortgagee in possession must account for profits from use of the mortgaged property against the debt owed by the mortgagee.

We find *Gaskell v. Viquesney,* 122 Ind. 244, 23 N.E. 791 (1890), to be more instructive. There, in facts similar to those before us, the Indiana Supreme Court explained as follows:

It is believed to be the universal rule, in all cases where the mortgagee takes and retains possession of the mortgaged premises under his mortgage that he must account for the rents and profits received by him from the premises while he holds the same under his mortgage.... This right to compel an accounting for rents and profits extends, also, to a junior incumbrancer. He may compel a senior mortgagee, who has been in possession under his mortgage, to account to the same extent and in the same manner as the mortgagor might compel an accounting. His right to compel such an accounting does not rest upon any obligation of the senior mortgagee to him, for there is no contract between them, but it rests upon the fact that the senior mortgagee is under obligation to the mortgagor to account and that by reason of his junior lien he has the right, in equity, to stand in the place of the mortgagor, and compel the application of the rents and profits to the satisfaction of the senior mortgage....

*Id.* at 792.

Our review of the evidence reveals that Phillips has a $355,467.40 first priority lien on the real estate based upon her repairs and work on the restaurant. Because of Phillips' expenditures, she was able to re-open an apparently popular restaurant that has taken in gross revenues between $1,000,000 and $1,250,000 per year. These revenues have paid all of the restaurant's ordinary operating expenses, salaries and dividends for Phillips, Casagrande, and Sokolik, health insurance for Phillips, and payments on the bank loan that funded the renovations as well as on the debt to T & F. To grant priority to Phillips' investment in repairing the restaurant, without crediting the lien amount with the profits from such investment, has no equity in it. Money Store, the junior incumbrancer, clearly has the right to compel an accounting and an application of the rents and profits to the senior lien. *See id.* The trial court erred in failing to order an accounting.

To sum up, we reverse the personal judgment against Money Store; we order an accounting for the profits of the restaurant to be applied to the amount due on

---

**2.** Currently codified at Ind.Code § 32–30– 3.1–1 et seq.

Phillips' first lien; we otherwise affirm the judgment of the trial court; and we remand to the trial court for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded.

DARDEN, J., and RILEY, J., concur.