No. 13,967.

## MAXON ET AL. *v.* LANE ET AL.

MORTGAGE.—*Acquisition of to Perfect Title.*—*Endorser and Endorsee.*—*Fore-closure.*—*Estoppel.*—A party who acquires a mortgage for the purpose of perfecting a title for which he has previously bargained does not occupy the position of an ordinary endorsee. He occupies no better position than his assignors, and if their acts and representations worked an estoppel against them the estoppel operates against the assignees.

SAME.—*Representations Whereby Another is Induced to Change His Position.*—*Estoppel.*—If a party who holds a mortgage declares it to be invalid or agrees not to enforce it, or makes representations or does acts whereby another is induced to change his position and expend money, he is estopped by such representations and acts, whether fraudulent or not, to foreclose the mortgage.

ESTOPPEL.—*Representations.*—*Subsequent Denial.*—It is not necessary in order to create an estoppel that the person who makes the representations upon which another acts, should, at the time of making them, intend to defraud the person to whom they were made, for the fraud consists in subsequently attempting to gainsay or deny the representations to the injury of the persons who acted upon them.

From the Elkhart Circuit Court.

*J. M. Vanfleet,* for appellants.

*H. D. Wilson* and *W. J. Davis,* for appellees.

ELLIOTT, J.—The appellants set forth in their complaint a note and mortgage, and ask a decree of foreclosure. The appellees pleaded facts constituting an equitable estoppel, and the finding of the trial court fully sustains the allegations of the answer setting up that defence. We think it unnecessary to give a synopsis of the answers, for the facts exhibited in the special finding are substantially the same as those stated in the answer, and in deciding the questions presented upon the special finding we effectually dispose of all the questions in the record.

The facts, as they appear in the special finding, are substantially these: On the 22d day of July, 1858, Vincent Voisinett was the owner of the real estate described in the

plaintiffs' complaint, and of the mill property and privileges owned by the defendants. On that day Voisinett conveyed to Allen, Cummins and Brown, and in the deed of conveyance was written this stipulation : " Said grantors also convey water to the amount of six hundred inches, to be furnished from the head of the race of the flouring-mill of said Voisinett, said supply of water to be constant and perpetual, the said grantees hereby agreeing to assist in keeping up the dam in the proportion of the amount of water used by them, and to construct and keep in order their own race." The property and rights of Allen, Cummins and Brown passed to Martin G. Sage and Norman Sage, by whom the property and rights were conveyed to a corporation named the Ball & Sage Wagon Company. On the 13th day of March, 1873, the Ball & Sage Wagon Company executed to Sarah Rawlings the note and mortgage described in the complaint, and the mortgage was recorded on the 15th day of May of that year. On the 20th day of June, 1873, Voisinett agreed to convey to Clark Lane the mill property and the residue of the water power, and on the 28th day of April, 1874, conveyed the property to him pursuant to that agreement, and Jacob C. Lane subsequently acquired an interest in the property. At that time the mill dam was out of repair and insecure, and for the purpose of improving the water-power and rebuilding the dam, Lane and the Ball & Sage Wagon Company entered into the following contract :

" Whereas, on or about the 22d day of July, 1868, Vincent Voisinett and wife did execute and deliver to H. H. Allen, S. M. Cummins and Brown a conveyance conveying a portion of the water-power of Elkhart river, situate on the east bank of said river and south of Jackson street, in the town of Elkhart, Indiana. The said conveyance being in the following words, to wit : ' Said grantors also convey water to the amount of six hundred inches, to be furnished from the head race of the flouring-mill of the said Voisinett ; ' said

supply of water to be constant and perpetual. The said grantees hereby agreeing to assist in keeping up the dam in the proportion to the amount of water used by them, and to construct and keep in order their own race. The said conveyance aforenamed at a subsequent date was purchased and is now owned by the Ball & Sage Wagon Company of said town of Elkhart. And, whereas, on the 19th day of August, 1873, said Voisinett and wife conveyed to Clark Lane, of Hamilton, Ohio, several tracts, parcels and lots of land, together with all the residue of their title and interest in and to said water-power first above named, saving and excepting therefrom thirty-six horse-power. And, whereas, several parties now owning said water-power intended to commence the improvement of the same at an early day, and to pay for said improvements in their due and proper proportions, also to stand jointly in the same proportion all costs and damages that may be sustained by others than themselves by reason of the making of said improvements. And, whereas, it is therefore necessary to define distinctly and definitely what shall forever be construed and admitted to be the true intent and meaning of six hundred inches of water as before named in said conveyance, and to fix the per cent. or proportion that the said Lane and the said Ball & Sage Wagon Company respectively shall pay towards the construction of said improvements, and also what they for themselves, their heirs and assignees agree shall forever after be binding upon them. Thereupon said Ball & Sage Wagon Company do now agree to the following, to wit: *First.* It is agreed that the said Ball & Sage Wagon Company are to have the right to, and that they shall on demand of said Lane, his heirs or assignees, place a water gauge or aperture of their own construction, not to exceed ten (10) inches by sixty (60) inches capacity of discharge into and above the bottom of their flume or forebay as at present constructed, and at the south end thereof where the same now connects with the main head-race. Said aperture to be forever thereafter kept in

good repair and of no greater capacity of discharge than ten by sixty inches as aforedescribed, but said aperture or gauge may be so changed at any time to such shape or form as said Ball & Sage Wagon Company choose to adopt, and with privilege to place the same at any point above the present bottom of their flume as before described. *Second.* Said Lane and said Ball & Sage Wagon Company agree to build a good and suitable dam for said water-power across the Elkhart river at a point near the site of the present old dam, and also to fill the channel with a gravel and earth embankment of suitable heighth and strength to effectually fulfil the agreements and to take the place of what has generally been known as ' the channel dam ' first named to be built to the full height of the old dam as originally constructed as nearly as can be ascertained. *Third.* Towards the construction expense of building said dams or dam and embankments aforenamed, the said Ball & Sage Wagon Company do hereby bind their said company and assignees to pay the one-tenth part of all expenses, and also to pay in like proportion the expenses of keeping the same in perpetual good order and repair, and also in like proportion to pay any damages that might be sustained by the overflow of the lands, etc. Forward & Little, now owners of the undivided one-sixteenth part of said water-power, and by virtue of their title to the same are liable for a one-sixteenth part of all such costs, damages, etc., aforesaid. And the said Lane, for himself, his heirs and assignees, does undertake and agree to construct and build all of the residue of said works not named in the foregoing, at his own expense, also to keep the same in good repair, and to perpetually after the construction of all said works to cause the same to be from time to time, as necessity may require, kept in good order and repair, and to pay his due proportion of all costs of same less the sum or proportion as above set forth, to be paid by said Ball & Sage Wagon Company and said Forward & Little."

Prior to and at the time the contract was entered into

Martin G. Sage and Norman Sage were partners under the firm name of Sage & Sage, and as such partners owned all of the capital stock of the Ball & Sage Wagon Company, except $1,800. The total amount of stock was $20,000, and Martin G. Sage was president and Norman Sage treasurer of the corporation. They managed and controlled the corporate business. The corporation was largely indebted, and all of its indebtedness was to Sage & Sage. The indebtedness was nearly equal to the value of the property, and the earnings of the corporate business were received by Sage & Sage, and, after paying the running expenses, were applied to the payment of the debts of the corporation. At the time the contract was entered into Lane had no knowledge that Sage & Sage were the owners of the mortgage executed by the Ball & Sage Wagon Company, nor did he acquire such knowledge until this suit was commenced. Sage & Sage represented to Lane that they held all the indebtedness of the wagon company; that they were in possession and control of all of its property; that they had a right to manage its affairs and make contracts; that they would have all the corporate debts to pay, and were practically the owners of all of the property held by the corporation. Pursuant to the terms of the contract the parties repaired and improved the dam and water-power at a cost of $20,000, each of the parties paying his proportion as provided in the contract. In April, 1881, the Ball & Sage Wagon Company, by Sage & Sage, sold all of its property to the appellants for $5,000, the purchase-money was paid to Sage & Sage and by them credited on their claims against the corporation. After the sale was made and possession delivered it was found, upon consultation with an attorney, that a good title to the property could not be obtained by a deed from the corporation, and for the purpose of enabling the appellants to perfect their title, and for no other purpose, Sage & Sage transferred and endorsed the note and mortgage to the appellants. Sage & Sage agreed that they would pay all the costs and expense

of obtaining title through a foreclosure of the mortgage. Before the sale to the appellants the buildings of the wagon company were destroyed by fire, the company had ceased to do business and was wholly insolvent. On the 30th of June, 1883, the appellants recovered judgment against all the defendants to the suit except the appellees, the property was sold under the decree, and, no redemption having been made, a deed was executed to the appellants.

The trial court's conclusion of law was, " That the plaintiffs are not entitled to any decree against the defendants, Lane & Lane."

The appellants acquired the mortgage which they seek to foreclose for the purpose of perfecting a title for which they had previously bargained, and they do not occupy the position of ordinary indorsees. Nor have they been induced to part with money upon the faith of the validity of the mortgage, for they obtained it simply for the purpose of using it to perfect the title for which they had previously bargained. It is quite clear, therefore, that they do not occupy any better position than their assignors, and if the latter could not have foreclosed the mortgage, had they remained the holders of it, against the appellees, the appellants can not.

The appellants are bound by the acts and representations of their assignors, and if those acts and representations worked an equitable estoppel against the assignors that estoppel operates against them. In our judgment the representations and acts of Sage & Sage worked an estoppel which precludes the appellants from foreclosing the mortgage upon the interest of the appellees. Those representations secured the written contract which conferred a benefit upon Sage & Sage, and induced the appellees to lay out a large sum of money. As the representations have been acted upon, money parted with, and the position of the appellees changed in an essential particular, the holders of the mortgage can not gainsay the representations of their assignors to the injury of the parties who, relying upon them, changed their position and

parted with money.   If a party induces another to change
his position and expend a large sum of money, equity will
not permit such a party to reap any advantage from the
change to the prejudice of the other ; nor will it permit him
to do what he has expressly or impliedly promised not to do.
If a party who holds a mortgage declares it to be invalid, or
agrees not to enforce it, and thus induces another to buy the
property, the courts will not aid him by awarding him a de-
cree of foreclosure.   *Wisehart* v. *Hedrick,* 118 Ind. 341 ;
*May* v. *Council,* 39 N. W. Rep. (Iowa) 879 ;   *Wise* v. *Newat-
ney,* 26 Neb. 88 .

The principle which rules here is precisely the same as that
which prevails in the class of cases which we have mentioned.
A party may be concluded by inferences which naturally
arise from his conduct as well as by express words.   *Irvine*
v. *Scott,* 85 Ky. 260.   This principle was applied in *Risien*
v. *Brown,* 73 Tex. 135, to a case very like the present.

It is not necessary in order to create an estoppel that the
person who makes the representations upon which another
acts should, at the time of making them, intend to defraud
the person to whom they are made, for the fraud consists in
subsequently attempting to gainsay or deny the representa-
tions to the injury of the person who acted upon them.   *Wise-
hart* v. *Hedrick, supra ; Babcock* v. *People's Savings Bank,*
118 Ind. 212 ; *Kelley* v. *Fisk,* 110 Ind. 552 ; *Ward* v. *Berk-
shire Life Ins. Co.,* 108 Ind. 301 ;   *Quick* v. *Milligan,* 108
Ind. 419, and cases cited ; *Anderson* v. *Hubble,* 93 Ind. 570
(47 Am. Rep. 394) ;   *Humphreys* v. *Finch,* 97 N. C. 303 (2
Am. St. Rep. 293) ; *Bynum* v. *Preston,* 69 Texas, 287 (5 Am.
St. Rep. 49).

Judgment affirmed.

Filed May 26, 1890 ; petition for a rehearing overruled Sept. 18, 1890.