## MERCHANTS NATIONAL BANK & TRUST COMPANY OF INDIANAPOLIS, Plaintiff-Appellant,

v.

## H.L.C. ENTERPRISES, INC., d/b/a Trader Vic's, Herbert L. Combs and Barbara A. Combs, Defendants-Appellees.

### No. 1–582A107.

Court of Appeals of Indiana, First District.

Nov. 9, 1982.

510

William E. Limeberry, Wilson & Limeberry, Greenwood, for plaintiff-appellant.

Douglas W. Kessler, Gantz, Smart & Kessler, Greenwood, for defendant-appellee Barbara A. Combs.

RATLIFF, Presiding Judge.

## STATEMENT OF CASE

Merchants National Bank & Trust Company of Indianapolis appeals the trial court's judgment in its action on three promissory notes, a security agreement, and foreclosure of a mortgage against H.L.C.

Enterprises, Inc., d/b/a Trader Vic's, Herbert L. Combs, and Barbara A. Combs. We reverse and remand.

## FACTS

In September 1976 Merchants provided a $54,000 capital loan and a $200,000 line of credit to H.L.C. secured by assets of the corporation and the personal continuing guaranty of the sole officers and stockholders of the corporation, Herbert and Barbara Combs. The corporation encountered financial difficulties beginning in December 1977, and Merchants agreed to advance additional funds to insure continued operation during a period of orderly, voluntary liquidation of the corporation so that the corporate indebtedness of approximately $200,000 owing Merchants would be repaid. On December 30, 1977, Herbert and Barbara executed a second mortgage on their family residence to renew an existing $5,000 loan and to secure an additional loan of $5,000, as well as future loans to the corporation up to a total of $30,000. On that same date the Combs also executed an owner's consent authorizing the corporation to pledge the residential real estate as collateral for corporate debts. After December 30, 1977, Merchants advanced a total of $32,302.75 to cover corporate operating expenses. The evidence of this debt was three promissory notes signed only by Herbert upon which Merchants subsequently brought this suit. As of the date of trial none of the notes had been paid, and Merchants asserted personal liability against Herbert and Barbara pursuant to the terms of the mortgage and owner's consent document. The corporation and Herbert suffered default judgments to be entered against them. Barbara, however, denied personal liability on the debt for any amount over $10,000, contending that her position was that of a collateral guarantor and that inasmuch as the document of guaranty contained no language waiving her right to receive notice of default in payment of the principal obligor's obligations and inasmuch as she received neither consideration for the mortgage nor notice that the corporation was in default in its obligations to Merchants or of the renewals of the notes, she should not be held liable for the renewals or extensions of notes executed subsequent to the document of guaranty and in excess of the original $10,000 debt. The court agreed with Barbara, entering specific findings in accord with her arguments and findings in addition that she did not intend to pledge the residence in excess of $10,000. Thus the court limited Barbara's liability upon the second mortgage to $10,000. Merchants appeals.

## ISSUE

Was the trial court's judgment in this case contrary to law?

## DISCUSSION AND DECISION

Merchants argues that the trial court's failure to give effect to the open-ended provision of the mortgage is against the logic, effect, and weight of the evidence in this cause and therefore that the judgment should be reversed.

On appeal we presume that the trial court has correctly decided the case and indulge all reasonable presumptions in favor of the trial court's action. *State v. Kuespert,* (1980) Ind.App., 411 N.E.2d 435, 438. We presume nothing in favor of the appellant; it is his burden to show clearly that the trial court erred. *Id.; English Coal Co., Inc. v. Durcholz,* (1981) Ind.App., 422 N.E.2d 302, 307, *trans. denied.* "In considering the sufficiency of the findings of fact and conclusions of law to sustain the decision," we are bound by the rule "that this court must accept ultimate facts as stated by the trial court if there is evidence to sustain them, . . ." (Footnote omitted.) *Miller v. Ortman,* (1956) 235 Ind. 641, 665, 136 N.E.2d 17, 31. In order for the court on appeal to set aside the findings or judgment, such must be clearly erroneous. Indiana Rules of Procedure, Trial Rule 52(A)(3); *Town & Country Mutual Insurance Co. v. Savage,* (1981) Ind.App., 421 N.E.2d 704, 707. A finding is clearly erroneous only if the evidence is uncontradicted and will support no reasonable inference in favor of the

finding. *Masson Cheese Corp. v. Valley Lea Dairies, Inc.,* (1980) Ind.App., 411 N.E.2d 716, 718, *trans. denied.* Under the same rules a judgment will be set aside as clearly erroneous when, although there is evidence to support the trial court's findings and decision, the record leaves the reviewing court with a definite and firm conviction that a mistake has been committed. *Moore v. Moriarty,* (1981) Ind.App., 415 N.E.2d 779, 781; *Arnold v. Dirrim,* (1979) Ind.App., 398 N.E.2d 442, 446; *Young v. Bryan,* (1977) Ind.App., 368 N.E.2d 1, 2, *aff'd* Ind.App., 368 N.E.2d 3, trans. denied. We hold that several of the trial court's findings, hence its conclusions, are clearly erroneous.

The evidence in this case shows that on December 30, 1977, Herbert and Barbara Combs signed a second mortgage on their home in favor of Merchants to secure a note for $10,000 with a provision for future indebtedness of the parties jointly or severally up to an amount of $30,000. The seventh provision of that mortgage reads as follows:

"SEVENTH. That it is contemplated that the mortgagee may make future advances to the mortgagors, in which event this mortgage shall secure the payment of any and all future advances and of any additional amount, provided that at no time shall the total amount owed by the mortgagors to this mortgagee and secured by this mortgage from said mortgagors to said mortgagee, exceed the sum of $30,000.00 and provided further that such future advances are equally secured and to the same extent as the amount originally advanced on the security of this mortgage. The mortgagee at its option may accept a renewal note, or notes, at any time for any portion of the indebtedness hereby secured and may extend the time for the payment of any part of said indebtedness without affecting the security of this mortgage in any manner. This Mortgage shall also secure the payment of any other liabilities, joint, several, direct, indirect, or otherwise, of Mortgagors to the holder of this Mortgage."

Record at 554. On that same date Herbert and Barbara personally executed the following owner's consent form authorizing H.L.C. to pledge their mortgage as security for its debts:

"OWNER'S CONSENT

"To MERCHANTS NATIONAL BANK & TRUST COMPANY OF INDIANAPOLIS, INDIANAPOLIS, INDIANA.

The undersigned hereby authorizes H.L.C. Enterprises, Inc. (herein called Debtor) to hypothecate, pledge and/or deliver the real estate mortgage described below belonging to the undersigned, and the undersigned agrees that when so hypothecated, pledged and/or delivered said real estate mortgage shall be collateral to secure any present or future indebtedness, obligation or liability howsoever evidenced, owing by Debtor to you, or any extension or renewal thereof, hereby consenting to the extension or renewal from time to time of any such indebtedness, obligation or liability, and waiving any notice of such indebtedness, obligation, liability, extension or renewal. The undersigned further agrees that said real estate mortgage shall be subject to disposition in accordance with the terms and conditions of the instruments evidencing such indebtedness, obligations and liabilities and/or the direction of Debtor.

A second real estate mortgage on certain real estate commonly known as 469 Lawnwood, Johnson County, Greenwood, Indiana more particularly described as follows: Lot 159, Colonial Meadows, 6th Section, Plat Book 7, Page 22.

Executed and dated at Indianapolis, Indiana, this 30 day of Dec., 1977.

/s/   Herbert L. Combs
        Herbert L. Combs"

Record at 26.

■ It is commonly accepted that "where other instruments are executed contemporaneously with a mortgage and are part of the same transaction, a mortgage may be modified by other instruments and all the documents are to be read together to determine and give effect to the intention

of the parties." *Boyette v. Carden,* (1977) Fla.App., 347 So.2d 759, 761. *Accord* 59 C.J.S. *Mortgages* § 156, at 208 (1949). As is true in the interpretation of all written agreements, the language of the mortgage and supporting instruments, unless it is ambiguous, represents the intention of the parties and is controlling. *Kimbell Foods, Inc. v. Republic National Bank of Dallas,* (5th Cir.1977) 557 F.2d 491, 496, *aff'd* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711. In the absence of fraud or overreaching, it is these objective, written materials, rather than the parties' subjective understandings, which are controlling. *Id.* No allegations of fraud, overreaching, or unconscionable conduct are present in this case. While parol evidence, then, is admissible to explain the facts and circumstances surrounding the agreement, it must not be used to vary or contradict the written covenant. *Lamoille County Savings Bank & Trust v. Belden,* (1916) 90 Vt. 535, 542, 98 A. 1002, 1006. When construing the agreement between the parties, the court's duty is confined to an interpretation of the contract which the parties themselves have made; "it is not the province of the court to make a new contract for the parties...." 59 C.J.S. *Mortgages* § 152, at 204 (1949). The court may not ignore or eliminate provisions of the instrument. *Id.*

In the case at bar, the court in its findings totally ignored the last sentence of the seventh provision of the mortgage which reads, "This Mortgage shall also secure the payment of any other liabilities, joint, several, direct, indirect, or otherwise, of the Mortgagors to the holder of this Mortgage." Thus the court's finding that the mortgage was intended to secure only loans made to the Mortgagors jointly, and not to either Mortgagor individually, was contrary to the language of the written instrument. While such "dragnet" clauses are not favored by the law because of the possibility that they could work a fraud on creditors, *Bowen v. Ratcliff,* (1895) 140 Ind. 393, 397, 39 N.E. 860, 682, such danger does not exist between the parties.

"The guiding principle in the construction of a 'dragnet' clause in a mortgage is the determination of the intention of the parties. The question frequently resolves itself into whether, in view of the surrounding circumstances and the language employed in the mortgage, the parties intended the security of the mortgage to operate upon a pre-existing or subsequently created indebtedness not specifically described in the mortgage. *Monroe County Bank v. Qualls* (1929) 220 Ala. 499, 125 So. 615."

Annot., 172 A.L.R. 1079, 1080 (1948). *Accord Financial Acceptance Corp. v. Garvey,* (1978) 6 Mass.App. 610, 613, 380 N.E.2d 1332, 1335. *See also* 55 Am.Jur.2d *Mortgages* § 144, at 285 (1971). Indiana has long held that open-ended provisions in mortgages are valid. *In re Woodruff,* (7th Cir.1959) 272 F.2d 696, 697, *cert. denied,* 362 U.S. 940, 80 S.Ct. 806, 4 L.Ed.2d 770; *Brinkmeyer v. Browneller,* (1876) 55 Ind. 487, 494; *Bowen v. Ratcliff; Creech v. LaPorte Production Credit Association,* (1981) Ind. App., 419 N.E.2d 1008, 1011. As stated by the court in *Woodruff,* "A mortgage may be taken and held as security for future advances when a provision that such future advances will be covered by the lien, is made a constituent part of the original agreement. *Brinkmeyer v. Browneller,* 1876, 55 Ind. 487, 494." 272 F.2d at 697. That provision was clearly a part of the mortgage at issue here.

Case law in other jurisdictions reflects differing interpretations of dragnet clauses where the language specifies that the mortgage is to secure the "indebtedness of the mortgagors" as distinct from the "indebtedness of the mortgagors or either of them." *See Holiday Inns, Inc. v. Susher-Schaefer Investment Co.,* (1977) 77 Mich. App. 658, 259 N.W.2d 179 and cases set out therein. We would agree with the court in the case of *Security Bank v. First National Bank,* (1978) 263 Ark. 525, 565 S.W.2d 623, that a mortgage with a dragnet clause executed jointly by a husband and wife on their home would not by itself secure subsequent business loans made to the husband individually where the business indebted-

ness was not a part of the original transaction and the wife was not connected with the business. But such is not the case here. When Barbara signed these documents, $10,000 was loaned to her and Herbert for the use and benefit of the already financially ailing corporation of which Barbara was secretary and joint shareholder. Had the corporation prospered she would have reaped the benefits. She should not be heard now to say that she intended to be bound only to the extent of $10,000 for future advances. When the two instruments here are read together in light of the facts and circumstances in existence at the time they were executed there can be no doubt but that they reflect the intent of the signators that the mortgage secure future loans to the joint or individual mortgagors, as well as to the corporation, up to $30,000. The trial court clearly erred in holding otherwise.

Likewise, the trial court erred in holding that Barbara's position as a mortgagor was only that of a collateral, rather than an absolute, guarantor and therefore that she was entitled to notice before she would be liable for more than $10,000. Barbara was an owner of both the real estate and the business whose interests as such were not separate and distinct from that of the principal obligor. *See Furst & Bradley Manufacturing Co. v. Black,* (1887) 111 Ind. 308, 12 N.E. 504. Her liability under the mortgage, therefore, was direct and absolute, and she was not entitled to special notice by Merchants of the corporation's default or insolvency before advances were made. *Bowyer v. Clark Equipment Co.,* (1976) 171 Ind.App. 431, 436, 357 N.E.2d 290, 293, *trans. denied* (1977). While the presumption exists that a corporation is a separate and distinct legal entity from its shareholders, officers, and directors, this rule may be disregarded in the interests of justice and equity where the shareholders are an alter ego of the corporation. *Forester & Jerue, Inc. v. Daniels,* (1982) Ala., 409 So.2d 830, 832. It may be just, in certain cases, to impute the knowledge of one corporate officer to another merely by virtue of his or her office. *See* 19 Am.Jur.2d

*Corporations* § 1287 at 694 (1965). Such a case has been found to exist where the husband as president of a closely held family corporation has been given virtually unfettered managerial control of all aspects of the business and has apparent authority to act on behalf of all shareholders and officers of the corporation. This was the case in *Lettieri v. American Savings Bank,* (1980) 182 Conn. 1, 437 A.2d 822, and such is the case here. Notice of the financial condition of the corporation should be imputed to Barbara as the only other officer and shareholder thereof because her acquiescence in the act of refinancing and incurring the debt was virtually assured by her consistent past behavior of delegating the conduct of the entire business to Herbert. Equity should not and will not require the performance of a useless formality. *Bank of LaFayette v. Giles,* (1952) 208 Ga. 674, 679, 69 S.E.2d 78, 82. Thus, the trial court also erred in concluding that Barbara's liability under the mortgage should be limited to $10,000 rather than $30,000 because she was not given notice by Merchants of the corporation's financial condition before advances were made.

We reverse and remand this case to the trial court for further proceedings not inconsistent with this opinion.

NEAL and ROBERTSON, JJ., concur.