ATTORNEYS FOR APPELLANT
Mark R. Galliher
Craig D. Doyle
Joann B. Friedmeyer
James L. Shoemaker
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE PAULA PHILLIPS
John Burt
G. Martin Cole
Jeremy J. Grogg
Jeffrey Clark
Fort Wayne, Indiana

# In the
# Indiana Supreme Court

---

No. 02S03-0508-CV-355

THE MONEY STORE INVESTMENT CORPORATION
d/b/a FIRST UNION SMALL BUSINESS CAPITAL,

*Appellant (Plaintiff below),*

v.

NEAL A. SUMMERS, HAPPY HIKER, INC.,
MANGY MOOSE ENTERPRISES, INC., NATIONAL
CITY BANK OF INDIANA f/k/a FORT WAYNE
NATIONAL BANK, PAULA PHILLIPS, ET AL.,

*Appellees (Defendants below).*

---

Appeal from the Allen Circuit Court, No. 02C01-0109-CP-1341
The Honorable Thomas J. Felts, Judge

---

On Petition to Transfer from the Indiana Court of Appeals, No. 02A03-0404-CV-170

---

**June 27, 2006**

**Shepard, Chief Justice.**

Junior creditors usually wish they were higher up the priority ladder. Here, the junior creditor took an assignment of the first mortgage holder's "dragnet" mortgages, seeking to "tack on" her judgment lien and "leapfrog" the second mortgage holder. Understandably, this constitutes a matter of first impression. Our conclusion: this was a nice try, but the original

parties to the dragnet mortgages did not intend to secure a subsequent debt owed by the mortgagor to a third party.

**Facts and Procedural History**

From 1992 to 1996, Neal Summers granted eleven mortgages on three parcels of his real estate to Fort Wayne National Bank as security for a series of loans. Three of these mortgages contained dragnet clauses.

In February 1998, Paula Phillips sued Summers and the company in which he was the sole shareholder, Mangy Moose Enterprises, Inc. Her complaint raised a dispute over the ownership of the trademark/trade name "Paula's Seafood." The parties entered into a written settlement agreement on September 21, 1999, and the suit was subsequently dismissed without prejudice.

On September 15, 2000, Summers and Mangy Moose borrowed $508,275 from the Money Store Investment Corporation d/b/a First Union Small Business Capital and granted a mortgage on the same three parcels used to secure the Fort Wayne National mortgages (to which National City succeeded), plus an additional six lots. On the same day, Mangy Moose, by Summers as president and secretary, borrowed $471,000 from Money Store, and granted a mortgage on the same real estate.

Prior to these loans, on August 30, National City sent to Money Store's title company three pay-off statements that included the daily interest. National City assured the title company that eight mortgages and two assignments of rents and leases would be released upon the proper payoff of the three loans. On September 15, National City received three payments, but one payment came up $375 short of the amount reflected on the pay-off statements. (Appellant's

2

App. at 271-274.)  National City did not release any of the mortgages and was still owed some $4700 on Mangy Moose's overdrawn checking account.[1]

Phillips filed a motion to enforce the settlement agreement on August 10, 2001.  Just over a month later, Money Store filed a complaint for foreclosure and appointment of a receiver.  On February 5, 2002, the trial court in the Phillips' action found that Summers and Mangy Moose had failed to comply with an earlier order and granted Phillips a $205,700 judgment.

Phillips then purchased National City's nine mortgages and two assignments of rents and leases, and National City assigned all of its interest to Phillips.  In March 2002, Phillips filed a complaint to foreclose these mortgages, and also moved to intervene in the Money Store foreclosure action.  Both Phillips and Money Store moved for summary judgment.

The trial court entered its judgment and decree foreclosing both Phillips' and Money Store's mortgages.  (Appellant's App. at 48m-o, r.)  It held that "dragnet" clauses contained in three of the mortgages assigned to Phillips secured "all debts or obligations owed to Paula Phillips by Summers," which included Phillips' judgment lien against Summers, Mangy Moose's overdrawn checking account, collection fees, attorneys fees, and interest.  (Appellant's App. at 48h-i.)  It granted Phillips priority over Money Store on the three Summers' lots used as collateral in the mortgages assigned to Phillips.

The Court of Appeals affirmed, holding that "the mortgage dragnet clauses support[] the trial court's conclusion that the monetary judgment resulting from Summers' failure to comply with his written settlement agreement was, after Phillips acquired the mortgage through assignment by National City, 'secured by' the dragnet mortgages."  The Money Store Inv. Corp. v. Summers, 822 N.E.2d 223, 229 (Ind. Ct. App. 2005) vacated.  We granted transfer.[2]

---

[1] As of August 31, 2000, Mangy Moose's business checking account with National City was overdrawn by that amount.  (Appellant's App. at 287.)

[2] Phillips argues that since Money Store failed to raise at the summary judgment stage any issue relating to whether the mortgages assigned to Phillips secured her judgment lien, Money Store waived this argument.  Money Store did raise this issue in its brief on summary judgment, when it argued, "[t]he assignment of mortgages by National City Bank of Indiana to Phillips did not vest Phillips with an interest in real estate that is prior to the interest held by The Money Store."  (Appellant's App. at 223.)  In any event, the rule that parties waive issues on appeal not presented at

3

## I. Equitable Estoppel

Money Store argues on appeal that National City would have been equitably estopped from asserting the priority of its mortgages "after inducing Money Store to make new loans of over $900,000 . . . in the belief that its new loans would be secured by a first mortgage." (Appellant's Br. at 17-18.)  Since an assignee of a mortgage takes no greater rights than the assignor, Strafford v. Lane, 124 Ind. 592, 24 N.E. 683 (1890), Money Store argues that Phillips' claim is subject to Money Store's equitable estoppel claim.

"The party claiming equitable estoppel must show its '(1) lack of knowledge and of the means of knowledge as to the facts in question, (2) reliance upon the conduct of the party estopped, and (3) action based thereon of such a character as to change his position prejudicially.'"  City of Crown Point v. Lake County, 510 N.E.2d 684, 687 (Ind. 1987) (quoting Damler v. Blaine, 114 Ind. App. 534, 542-43, 51 N.E.2d 885, 889 (1943)).

Money Store fails to satisfy the first requirement:  that it lacked the means of knowledge as to the facts in question.  Money Store says it could not know that National City would assign its mortgage seventeen months after the loan.  But the "fact in question" here is whether Money Store had the means of knowing whether or not the mortgages had been released, and it unquestionably did.  When the debt and interest that a mortgage secures has been fully paid, the owner shall release, discharge, and satisfy of record the mortgage.  IND. CODE ANN. §§ 32-28-1-1, 32-29-11-1 (West 2002).  A simple title search and/or communications with National City would have revealed that the mortgage had not been released.

---

the trial court level refers to "substantive questions independent in character and not within the issues or not presented to the trial court."  Dedelow v. Pucalik, 801 N.E.2d 178, 183-84 (Ind. Ct. App. 2003)(quoting Bielat v. Folta, 141 Ind. App. 452, 454, 229 N.E.2d 474, 475 (1967)).  The issue of Phillips' security interest in Summers' property was before the trial court, and the court's order is replete with instances in which it dealt with this question. (Appellant's App. at 48m, o-p, r-s.)

## II. Dragnet Clauses

Indiana law adheres to the principle that the assignee of a mortgage assumes the rights of the original mortgage holder as well as the obligations. 20 I.L.E. Mortgages § 72 (2001). See also Strafford v. Lane, 124 Ind. 592, 24 N.E. 683 (1890); Porter v. Bankers Trust Co. of California, 773 N.E.2d 901 (Ind. Ct. App. 2002). Phillips' assignment interest therefore depends on what rights the original mortgage holder (National City) possessed by virtue of the language of the mortgage, specifically the dragnet clause.

Of all the mortgages National City assigned to Phillips, three contained dragnet clauses. Two of those mortgages "secure the payment of any and all other notes or obligations of the Mortgagor to the Mortgagee, direct or indirect, due or to become due, now existing or hereafter contracted . . . ." (Appellant's App. at 114, 312.) The third mortgage "secure[s] the payment and performance of all present and future indebtedness, liabilities, obligations and covenants of Borrower or Mortgagor . . . to Lender . . . ." (Appellant's App. at 315.)

While dragnet clauses that create open-ended mortgages are valid, IND. CODE ANN. § 32-29-1-10 (West 2002), they are strictly construed against the drafting party. Citizens Bank & Trust Co. of Washington v. Gibson, 490 N.E.2d 728 (Ind. 1986). The main consideration in construing dragnet clauses is the parties' intention. Merchs. Nat'l Bank & Trust Co. of Indianapolis v. H.L.C. Enters., Inc., 441 N.E.2d 509 (Ind. Ct. App. 1982). More particularly, a debt not specifically described is secured by the mortgage if the parties intended it to be secured based on the surrounding circumstances and the mortgage language. Id. at 513. The mortgage language need not literally describe the debt, but "the character of the debt and the extent of the encumbrance should be defined with such reasonable certainty as to preclude the parties from substituting other debts than those described, thereby making the mortgage a mere cover for the perpetration of fraud upon creditors." New v. Sailors, 114 Ind. 407, 410, 16 N.E. 609, 610 (1888).

Phillips' interpretation of the dragnet clauses is that the parties' intention was to secure National City for "any and all indebtedness, liabilities, or obligations owed by Summers."

(Appellee's Br. at 15-16, 18.) This ignores plain language of the contract limiting the debts to those between the mortgagor and the mortgagee. Applying Phillips' rationale, the mortgages secured any debt owed by Summers to any creditor crafty enough to obtain an assignment of the mortgages. This simply cannot be. There is no indication whatsoever that National City and Summers contemplated that debts owing from Summers to third parties could be "tacked on" to the mortgages. The New v. Sailors holding thus prohibits the substituting of Summers' debt to Phillips for those debts described in the mortgages.

While it is true that Phillips stepped into the shoes of the mortgagee, this entitled her to collect debts secured in accordance with the terms of the mortgages, not her judgment lien. The debts in this case were limited to the $375 short payment on the loan payoff and the $4700 overdrawn checking account, plus interest, collection costs, and attorney's fees.

This conclusion finds support from other jurisdictions. Georgia passed a law in 1958 limiting debts included in dragnet mortgage clauses to contractual debts and obligations between the original parties to the security agreement. 1958 Ga. Laws. 655-56. Phillips' correctly points out that Indiana does not have this statutory limitation on dragnet mortgage clauses (Appellee's Br. at 20), but we nevertheless find this provision illuminating, as are some cases from other states.

As for case law, in Republic Nat. Bank of Dallas v. Zesmer, the mortgagor granted three separate chattel mortgages with dragnet clauses on three different vehicles to Liberty State Bank. 187 S.W.2d 227, 228 (Tex. Civ. App. 1945). The mortgagor then executed an unsecured promissory note to Republic National Bank. Id. After the mortgagor died, Republic acquired the three notes and mortgages from Liberty and attempted to claim a security interest in the vehicles for the amount of the three Liberty notes and Republic's note. Id. The Texas Court of Civil Appeals held that the mortgagor and Liberty did not contemplate that the chattel mortgages would also be security for subsequent debt of the mortgagor to Republic. Id. at 229. According to the court, subjecting mortgaged property to unsecured indebtedness through an assignment by the secured creditor would threaten the stability of secured indebtedness. Id.

6

In <u>Fin. Acceptance Corp. v. Garvey</u>, the mortgagor, as an individual and president of a company, executed a first and second mortgage with dragnet clauses and two promissory notes to Coolidge Bank & Trust Co. in 1970. 6 Mass. App. Ct. 610, 380 N.E.2d 1332 (1978). In 1972, the mortgagor and bank cancelled these notes and executed new notes, this time with the mortgagor signing as a trustee, and endorsing as an individual. <u>Id.</u> at 611, 1334. In 1973, the mortgagor, as a trustee and individually, granted a third mortgage to Financial Acceptance Corporation on the same property. <u>Id.</u> at 612, 1334. During foreclosure proceedings, Financial argued that since the mortgagor was the maker of the earlier notes but endorser of the later notes, the new notes were unrelated to the old notes, and thus unsecured. <u>Id.</u> at 613, 1335.

The court's test for determining if a debt not specifically described is secured by a dragnet clause is whether the debt is of the general kind of those specifically secured or sufficiently close in relationship, and whether the mortgagee relied on the security in making the loan. <u>Id.</u> The court found that though the mortgagor switched from maker to endorser, the notes were still of the same general kind of debt and that the mortgagee relied on the security in making the loan because this was just a renewal of notes that was all part of the same course of business dealings. <u>Id.</u> at 613-16, 1335-36.

Phillips' judgment lien arose from litigation over misappropriation of a trade name. It thus hardly qualifies under dragnet language covering "all other notes or obligations of the Mortgagor to the Mortgagee." Moreover, we cannot see how National City could possibly have relied on its dragnet mortgages to secure Summers' judgment debt to third party Phillips.

**Conclusion**

We reverse the trial court's grant of priority to Phillips over Money Store on the lots in question.[3]

**Dickson, Sullivan, Boehm, and Rucker, JJ., concur.**

---

[3] We summarily affirm the Court of Appeals' disposition of the issues about the admissibility of the affidavits, Summers' personal liability, and attorney's fees. Ind. Appellate Rule 58(A).