CADLEWAY PROPERTIES, INC., Appellant/Plaintiff,
v.
5620 INDUSTRIAL ROAD, LLC, RICHARD A. MAGLEY, OSSIAN STATE BANK, SMALL BUSINESS ADMINISTRATION, TERRY L. MAGLEY, and WAYNE FASTENERS, Appellees/Defendants,
No. 02A04-0802-CV-67
Court of Appeals of Indiana.
August 12, 2008.
DANIEL E. SERBAN, Serban Law Office, P.C. Fort Wayne, Indiana, ATTORNEY FOR APPELLANT.
G. MARTIN COLE, JEREMY J. GROGG, Burt, Blee, Dixon, Sutton & Bloom, LLP, Fort Wayne, Indiana, ATTORNEYS FOR APPELLEE OSSIAN STATE BANK.

MEMORANDUM DECISION
BRADFORD, Judge
Appellant/Defendant Cadleway Properties, Inc. ("Cadleway"), appeals from the trial court's grant of partial summary judgment in favor of Ossian State Bank ("Ossian"). On appeal, Cadleway contends that the trial court erroneously concluded that Ossian, pursuant to a previously-issued mortgage containing a so-called "dragnet" provision, owns the right to a personal guaranty that Cadleway claims to own. We affirm.

FACTS AND PROCEDURAL HISTORY
On March 30, 1999, Richard Magley granted to NBD Bank, N.A., the predecessor in interest to Bank One Indiana, N.A., a mortgage ("Mortgage I") securing a $1.6 million interest in property known as 5620 Industrial Road ("the Property") in Fort Wayne. The Mortgage I instrument contained the following language, which shall be referred to as the "Dragnet Provision":
This Mortgage secures the indebtedness or obligation evidenced by:
(i) the guaranty of the debt of BENZ MOBILE PRODUCTS, INC., and MAGLEY SPECIAL TRUCKS, INC., dated March 30, 1999, executed and delivered by Richard A. Magley to the Mortgagee; including any extensions, renewals, modifications or replacements without limit as number or frequency (the "Debt").
Cross-Lien. The Debt shall also include all other present and future, direct or indirect obligations and liabilities of the Mortgagor, or any one or more of them, with or without others, to the Mortgagee or any of its affiliates up to a maximum of $1,600,000.00. This shall not apply to any other obligation or debt incurred for personal, family or household purposes unless the note or guaranty expressly states that it is secured by this Mortgage.
Appellant's App. p. 29.
On December 20, 2000, Magley sold the Property to 5620 LLC ("5620"), a corporation of which he is a member. On April 1, 2001, 5620 delivered an "Installment Business Loan Note" ("the Note") to Bank One in the amount of $158,648.00. Appellant's App. p. 38. On May 18, 2001, 5620 delivered a mortgage ("Mortgage II") and note in the amount of $167,000.00 to Bank One related to the Property. Also on May 18, 2001, Magley gave to Bank One an "Unlimited Continuing Guaranty" ("the Magley Guaranty") in which he pledged and granted to Bank One a continuing security interest in
1. All investment property of the Guarantor in the custody, possession or control of the Bank (other than property held by the Bank solely in a fiduciary capacity);
2. All property or investment property declared or acknowledged to constitute security for any past, present or future liability, direct or indirect of the Guarantor to the Bank;
3. All balances of deposit accounts of the Guarantor with the Bank.
Appellant's App. p. 40.
On October 8, 2003, Bank One assigned Mortgage II to Cadleway and, on December 4, 2003, assigned Mortgage I to Cadleway. On December 30, 2003, Cadleway and Ossian entered into an "Agreement to Purchase Loans" ("the Agreement"), which provided for the transfer from Cadleway to Ossian of, inter alia, its rights in Mortgage I but not its rights in the Magley Guaranty. On April 29, 2004, Bank One assigned the Note to Cadleway.
On August 6, 2004, Cadleway sued Magley, 5620, Ossian, Terry L. Magley, Wayne Fasteners, and Community Corporation of Fort Wayne on the Note, alleging that 5620 had failed to make monthly payments as prescribed. At some point, Ossian also filed suit against Magley and various of his interests. Cadleway later filed a motion to substitute the United States Small Business Administration ("the SBA") for Community Corporation of Fort Wayne, which motion was granted. The SBA removed both suits to the United States District Court for the Northern District of Indiana and, eventually, they were consolidated under Cause Number 1:04cv441.
In the District Court, Cadleway and Ossian filed cross-motions for summary judgment. Essentially, the summary judgment motions sought to resolve the single question of whether Cadleway was entitled to enforce the Magley Guaranty to secure repayment of the Note. Ossian maintained that the Dragnet Provision of Mortgage I, the rights to which it had purchased from Cadleway, encompassed the Magley Guaranty. On February 16, 2006, the District Court denied Cadleway's motion for partial summary judgment and granted Ossian's, concluding that Ossian was the "true owner of the [Magley] Guaranty[.]" Appellant's App. p. 22.
The District Court's ruling was appealed, and, on February 15, 2007, the United States Court of Appeals for the Seventh Circuit dismissed the appeal for want of jurisdiction and remanded to the District Court. The basis of the Court's ruling was that it did not have jurisdiction because the District Court had only determined that Ossian was entitled to collect on the Magley Guaranty but did not determine in what amount. See Cadleway Props., Inc., v. Ossian State Bank, 478 F.3d 767, 769 (7th Cir. 2007). The Court of Appeals also noted that the only issue in the case involving federal law, namely the involvement of the SBA, had already been resolved, so it directed the District Court to consider its options under Section 1367(c), Title 28 of the United States Code, which include remand of the remaining issues to the state court. Id. at 770.
The District Court, with apparent agreement of all parties, remanded the case to the Allen Superior Court. On August 16, 2007, Cadleway filed a motion for partial summary judgment on the issue of whether Magley "ow[ed] any money to Cadleway on the guaranty, and if so, what is the amount owed." Appellant's App. p. 25. On December 21, 2007, the trial court granted Cadleway's motion for partial summary judgment, concluding that Magley owed Cadleway "$196,314.18, plus undetermined attorney fees, collection expenses, additional interest since August 31, 2007, and court costs." Appellant's App. p. 27. In so doing, the trial court concluded that the District Court's determination that the Magley Guaranty of the Note was subject to the Dragnet Provision of Mortgage I was "the law of the case" and did not revisit it.[1] Appellant's App. p. 27.

DISCUSSION AND DECISION
Cadleway contends that the District Court, and therefore the trial court by incorporation, erred in concluding that the Dragnet Provision of Mortgage I applied to the Magley Guaranty. In other words, although neither party to this appeal disputes the amount of Magley's obligation to Cadleway under the Loan, the question is whether the Magley Guaranty secures Cadleway's interest in the Loan. "Indiana law adheres to the principle that the assignee of a mortgage assumes the rights of the original mortgage holder as well as the obligations." Money Store Inv. Corp. v. Summers, 849 N.E.2d 544, 548 (Ind. 2006) (citations omitted). Ossian's assignment interest therefore depends on what rights the original mortgage holder (NBD) possessed by virtue of the language of the mortgage, specifically the Dragnet Provision.
While dragnet clauses that create open-ended mortgages are valid in Indiana, they are strictly construed against the drafting party. Id. (citing Citizens Bank & Trust Co. of Washington v. Gibson, 490 N.E.2d 728 (Ind. 1986); additional citation omitted).
The guiding principle in the construction of a "dragnet" clause in a mortgage is the determination of the intention of the parties. The question frequently resolves itself into whether, in view of the surrounding circumstances and the language employed in the mortgage, the parties intended the security of the mortgage to operate upon a pre-existing or subsequently created indebtedness not specifically described in the mortgage.
Citizens Bank, 490 N.E.2d at 730 (citation omitted).
"More particularly, a debt not specifically described is secured by the mortgage if the parties intended it to be secured based on the surrounding circumstances and the mortgage language." Money Store, 849 N.E.2d at 548 (citing Merchs. Nat'l Bank & Trust Co. of Indpls. v. H.L.C. Enters., Inc., 441 N.E.2d 509, 513 (Ind. Ct. App. 1982)). "The mortgage language need not literally describe the debt, but `the character of the debt and the extent of the encumbrance should be defined with such reasonable certainty as to preclude the parties from substituting other debts than those described, thereby making the mortgage a mere cover for the perpetration of fraud upon creditors.'" Id. (quoting New v. Sailors, 114 Ind. 407, 410, 16 N.E. 609, 610 (1888)).
As previously mentioned, the Dragnet Provision specifically provided that the debts secured by Mortgage I "shall also include all other present and future, direct or indirect obligations and liabilities of the Mortgagor, or any one or more of them, with or without others, to the Mortgagee or any of its affiliates up to a maximum of $1,600,000.00." Appellant's App. p. 29. The above language is clear, and the Magley Guaranty signifies a "direct or indirect obligation" of Magley to Bank One, the mortgagor and successor to the mortgagee. As such, even though never specifically assigned by Cadleway to Ossian, the Magley Guaranty was subject to the Dragnet Provision and so was transferred to Ossian along with Mortgage I.
Cadleway contends that it never intended to transfer the Magley Guaranty, arguing that it and Ossian would have included it in the Agreement had that been the case. Even though Cadleway could have specifically reserved its rights in the Magley Guaranty when it transferred Mortgage I to Ossian (which, in light of the Dragnet Provision, it would have had to do), it did not. See Pettit v. Pettit, 626 N.E.2d 444, 447 (Ind. 1993) ("[A] valid assignment gives the assignee neither greater nor lesser rights than those held by the assignor. Unless a contrary intent is shown, the assignee stands in the shoes of the assignor." (citations omitted and emphasis added)). The Agreement clearly transfers Cadleway's rights in Mortgage I but does not even mention the Magley Guaranty, much less specifically reserve any rights therein.
When interpreting a contract, our paramount goal is to ascertain and effectuate the intent of the parties. This requires that the contract be read as a whole, and the language construed so as not to render any words, phrases, or terms ineffective or meaningless. When the language of a contract is clear and unambiguous, the intent of the parties is determined from the four corners of the instrument, giving the words contained therein their plain, usual, and ordinary meaning. In such a situation, the terms are conclusive and we will not construe the contract or look at extrinsic evidence, but will merely apply the contractual provisions.
Crawford County Cmty. Sch. Corp. v. Enlow, 734 N.E.2d 685, 690 (Ind. Ct. App. 2000) (citations omitted). So, even if Cadleway's true intent was to retain rights in the Magley Guaranty, we will not give effect to it because such intent is not evident within the four corners of the Agreement. We affirm the trial court's conclusion that Ossian is the true owner of the Magley Guaranty.
We affirm the judgment of the trial court.
BARNES, J., and CRONE, J., concur.
NOTES
[1] Both parties agree that the trial court adopted the District Court's ruling in this regard.