**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 31 2012, 9:22 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARY A. SLADE**
Plunkett Cooney, P.C.
Indianapolis, Indiana

ATTORNEY FOR APPELLEES:

**JEFFREY J. JINKS**
The Jinks Corporation
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

WELLS FARGO BANK, )
)
    Appellant-Defendant, )
)
        vs. )    No. 06A04-1112-MF-680
)
CASTALIA HOMES, LLC, )
)
    Appellee-Plaintiff. )
)
JAN N. KELSEY, )
)
    Appellee-Defendant. )

APPEAL FROM THE BOONE SUPERIOR COURT
The Honorable Matthew C. Kincaid, Judge
Cause No. 06D01-0909-MF-611

**May 31, 2012**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

Wells Fargo Bank ("Wells Fargo") appeals the trial court's grant of summary judgment in favor of Castalia Homes, LLC, ("Castalia"). We reverse and remand.

## Issue

Wells Fargo raises two issues, which we consolidate and restate as whether the trial court properly granted summary judgment in favor of Castalia on the issue of priority.

## Facts

In 2007, Jan Kelsey and Castalia entered into an agreement to build a home for the 2008 Home-a-Rama in Zionsville. Kelsey purchased a lot and financed the construction with a loan from First Indiana Bank, N.A. First Indiana Bank later became M&I Bank ("M&I"). On September 11, 2008, Kelsey refinanced that loan with Wells Fargo and executed two mortgages for loans totaling $1,290,000. During this transaction, Frank Redavide, the President of Castalia, wrote a letter to Wells Fargo stating:

> As per my agreement with Jan Kelsey, I am owed $64,395.86 from M & I Bank for which I did not get paid. This will be my last and final draw. I am writing you this letter to inform you that I will need to be paid off at closing so I can pay off my subs so there will not be any liens on the property. Thank you for your attention in this matter and making sure everyone is taken care of before or at closing.

App. p. 206. On September 11, 2008, a check was executed from the title company, Title Express, Inc., to Castalia in the amount of $64,395.86. The Wells Fargo mortgages were recorded on September 26, 2008. On November 7, 2008, Castalia recorded a mechanic's lien claiming it was owed $335,000 for work it had performed during construction.

2

On September 2, 2009, Castalia filed a complaint against Kelsey and Wells Fargo. In the complaint, Castalia alleged that Kelsey had breached the construction contract and sought to foreclose on the mechanic's lien. According to the chronological case summary ("CCS"), on June 2, 2010, Castalia moved for default judgment, and on June 9, 2010, the trial court entered a civil judgment in the amount of $335,219. The CCS also indicates that, on August 6, 2010, the trial court ordered the sale of the home for $851,000 and the proceeds were to be held in escrow.

On February 15, 2011, Castalia moved for summary judgment seeking to foreclose on the mechanic's lien. In its motion, Castalia sought a judgment in the amount of $498,906.30 plus attorneys fees. On June 14, 2011, Wells Fargo responded and, on August 5, 2011, Castalia replied. On November 23, 2011, after a hearing, the trial court concluded that Castalia was entitled to summary judgment in the amount of $498,906.30 plus costs and attorney fees.[1] The trial court also concluded:

> 4. That [Castalia's] mechanic's lien interest is a first priority lien on the Proceeds, and the same should be foreclosed along with all other liens on and interests in the Property; Plaintiff's interest is superior to the interests of any and all other creditors including Wells Fargo Bank, and is granted without relief from valuation and appraisment laws.
>
> 5. The Proceeds shall be distributed pursuant to the Court Order first to the Castalia Claim, then to Wells Fargo Bank for their mortgage claims, and thereafter to Kelsey, if any.

App. pp. 12-13. Wells Fargo now appeals.

---

[1] Kelsey does not appeal the entry of summary judgment against him on Castalia's breach of contract claim or the portion of the summary judgment order terminating his interest in the property. Our decision does not affect the trial court's summary judgment order as it relates to Kelsey.

**Analysis**

Wells Fargo argues that the trial court improperly granted Castalia's motion for summary judgment. "[S]ummary judgment is appropriate only where the evidence shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Sheehan Const. Co. v. Continental Cas. Co., 938 N.E.2d 685, 688 (Ind. 2010) (citing Ind. Trial Rule 56(C)). All facts and reasonable inferences drawn from those facts are construed in favor of the non-moving party, and review of a summary judgment motion is limited to those materials designated to the trial court. Id. "Only after the moving party satisfies its burden to show the absence of any genuine issue of material fact and entitlement to judgment as a matter of law does the burden shift to the non-moving party to demonstrate the existence of a genuine determinative factual issue." Ashby v. Bar Plan Mut. Ins. Co., 949 N.E.2d 307, 310 (Ind. 2011).

In its motion for summary judgment, Castalia asserted that its mechanic's lien takes priority over the Wells Fargo mortgages, which were recorded first, because the mechanic's lien related back to when Castalia began performing labor or furnishing materials in February 2007. Castalia relied on Indiana Code Section 32-28-3-5(b), which provides in part:

> When the statement and notice of intention to hold a lien is recorded, the lien is created. The recorded lien relates back to the date the mechanic or other person began to perform the labor or furnish the materials or machinery. Except as provided in subsections (c) and (d), a lien created under this chapter has priority over a lien created after it.

4

On appeal, in addition to challenging the validity of the mechanic's lien, Wells Fargo argues that the doctrine of equitable estoppel bars Castalia from asserting that its mechanic's lien has priority over Wells Fargo's mortgages. In response, Castalia argues, "Wells Fargo failed to properly preserve equitable estoppel by not setting it forth in a responsive pleading, not asserting it during summary judgment proceedings, and not litigating it by consent; therefore, Wells Fargo waived appellate review." Appellee's Br. p. 13. According to Castalia, "Wells Fargo did not assert equitable estoppel at any point during the proceedings below, nor do the words 'equitable estoppel' ever appear on the record." Id. at 10.

Contrary to Castalia's contention, however, in its answer, Wells Fargo's asserted that Castalia's claims were barred "by the doctrines of laches, waiver and/or estoppel." Supp. App. p. 540. In its memorandum in opposition to summary judgment, Wells Fargo argued in part that Castalia waived its right to assert that its mechanic's lien takes priority over the Wells Fargo mortgages based on the doctrine of equitable estoppel. This three-page argument referenced the elements of equitable estoppel, included citations to cases and designated evidence, and provided an analysis of the claim. See id. at 549-52. The term "equitable estoppel" was used at least five times in the memorandum. During the hearing on Castalia's motion for summary judgment, counsel for Wells Fargo discussed the doctrine of equitable estoppel and provided an analysis of the elements based on the facts of this case. See Tr. pp. 26-31. We simply cannot agree with Castalia that Wells Fargo waived the issue of equitable estoppel.

Castalia also argues that Wells Fargo waived appellate review because it "could have initiated its own foreclosure proceedings, filed a cross-claim in these proceedings, moved for summary judgment, or filed a cross-motion for summary judgment." Appellee's Br. p. 13. Although Wells Fargo could have done what Castalia suggests, Castalia provides no authority requiring Wells Fargo to assert a claim in order to take the position that its mortgages have priority over Castalia's mechanic's lien.[2] We are not persuaded by this argument.

In a similar vein, Castalia asserts that the cases upon which Wells Fargo relies to establish its equitable estoppel defense are distinguishable because the banks and creditors in those cases filed suit to assert their claims. Castalia points out that Wells Fargo is part of the litigation only because it was named as a co-defendant and not because it asserted claims on the property. According to Castalia, "[d]ue to the central role asserting a claim plays in disposing of foreclosure litigation, this distinction between Wells Fargo's cited cases and the present cases makes them distinguishable and not on point." Appellee's Br. p. 15. Castalia does not provide us with any analysis of the specific cases cited by Wells Fargo, nor does it offer any authority for the proposition that a party must file suit before it can assert the doctrine of equitable estoppel. To the contrary, we have observed that "equitable estoppel is available only as a defense." Town of New Chicago v. City of Lake Station, 939 N.E.2d 638, 653 (Ind. Ct. App.

---

[2] In its answer, Wells Fargo asserted as an affirmative defense that its mortgages have priority over Castalia's alleged lien and requested that its mortgages be declared valid first priority liens. Even if Wells Fargo was required to assert a claim as Castalia suggests, we believe this affirmative defense could have been treated as such. See Ind. Trial Rule 8(C) ("If the pleading mistakenly designates a defense as a counterclaim or a counterclaim as a defense, the court shall treat the pleading as if there had been a proper designation.").

2010), trans. denied. Castalia's attempt to distinguish the cases upon which Wells Fargo relies is unavailing.

Castalia does not otherwise address the merits of Well Fargo's equitable estoppel argument. "An appellee's failure to respond to an issue raised in an appellant's brief is, as to that issue, akin to failing to file a brief." Nance v. Miami Sand & Gravel, LLC, 825 N.E.2d 826, 837 (Ind. Ct. App. 2005), trans. denied. Although this failure does not relieve us of our obligation to correctly apply the law to the facts in the record in order to determine whether reversal is required, the appellee remains responsible for controverting arguments raised by the appellant. Id. For us to reverse, Wells Fargo must establish only that the trial court committed prima facie error, which means at first sight, on first appearance, or on the face of it. See id.

Regarding estoppel, our supreme court has explained:

> Estoppel is a judicial doctrine sounding in equity. Although variously defined, it is a concept by which one's own acts or conduct prevents the claiming of a right to the detriment of another party who was entitled to and did rely on the conduct. There are a variety of estoppel doctrines including: estoppel by record, estoppel by deed, collateral estoppel, equitable estoppel-also referred to as estoppel in pais, promissory estoppel, and judicial estoppel. All, however, are based on the same underlying principle: one who by deed or conduct has induced another to act in a particular manner will not be permitted to adopt an inconsistent position, attitude, or course of conduct that causes injury to such other.

Brown v. Branch, 758 N.E.2d 48, 52 (Ind. 2001) (citations omitted). A party claiming equitable estoppel must show its: (1) lack of knowledge and of the means of knowledge as to the facts in question; (2) reliance upon the conduct of the party estopped; and (3)

action based thereon of such a character as to change its position prejudicially. Money Store Inv. Corp. v. Summers, 849 N.E.2d 544, 547 (Ind. 2006).

In its letter to Wells Fargo, Castalia explained that it was owed $64,395.86 and that that would be its "last and final draw." App. p. 206. Castalia also explained that it would need to be paid at closing "so there will not be any liens on the property." Id. In an affidavit signed by Kelsey at closing, Kelsey stated, "[t]here are no unpaid bills for labor or material which have been ordered, authorized, of [sic] furnished for the real estate, or which might operate to create a change, lien, or encumbrance against the real estate; . . . ." App. p. 410. On appeal, Castalia does not direct us to any evidence indicating that it did not execute the letter to Wells Fargo or showing that Wells Fargo was aware that Castalia was owed additional money. Thus, Wells Fargo has established that it lacked knowledge regarding any additional money owed to Castalia.

As for prejudicial reliance on Castalia's letter, Wells Fargo asserts, it "relied on that payoff statement by Castalia in electing to lend money to Kelsey in exchange for a mortgage. Indeed, it was only because Castalia assured Wells Fargo that there were no construction liens that Wells Fargo was willing to proceed." Appellant's Br. p. 17. Steven Hoke, the Vice President of Loan Documentation for Wells Fargo, stated in an affidavit that $64,395.86 of the mortgages proceeds were allocated to pay off Castalia in reference to a debt Kelsey owed. Hoke also stated that Wells Fargo relied on Castalia's letter and would not have agreed to refinance Kelsey's debt "without the allocated proceeds to Castalia paying off the Kelsey Debt." Id. at 101.

Richard Howenstine, the settlement closer with Title Express, stated that he personally delivered the payoff check of $64,395.86 to Redavide who confirmed that the payoff was correct. See App. p. 323. Howenstine also stated:

> 20. Title Express relied on the Castalia Payoff to allow the Refinance Transaction between Kelsey and Wells Fargo to close on September 11, 2008 with the intent for Wells Fargo to have a first priority lien on the Real Estate with Mortgage1 and a second priority lien on the Real Estate as to Mortgage2.
>
> * * * * *
>
> 22. If Castalia Homes, Inc. had notified Title Express, Inc. that the Payoff Request did not payoff all of Kelsey's indebtedness to Castalia Homes, LLC, Title Express would not have proceeded with the closing of the Refinance Transaction for the first priority and second priority mortgages as intended by Wells Fargo and Jan Kelsey.

Id. at 323-24. This designated evidence shows that Wells Fargo relied on Castalia's letter and was prejudiced by such reliance.

Castalia made affirmative statements to Wells Fargo regarding the amount it needed to be paid so there would not be any liens on the property and Wells Fargo detrimentally relied on those assertions when it loaned $1,290,000 to Kelsey. On appeal, Castalia offers no explanation as to why it executed a letter to Wells Fargo saying it was owed $64,395.86, accepted a check for that amount and then, less than two months later, filed a lien notice asserting it was owed $335,000. As such, Castalia is estopped from asserting that its mechanic's lien has priority over Wells Fargo's mortgages. See e.g., New Chicago, 939 N.E.2d at 657 (holding that, where Lake Station had ample opportunity (fifteen years) to notify New Chicago of a rate increase but remained silent,

9

application of estoppel against Lake Station was appropriate); Equicor Development, Inc. v. Westfield-Washington Twp. Plan Comm'n, 758 N.E.2d 34, 40 (Ind. 2001) ("In sum, the Plan Commission had ample opportunity to point out any deficiency in the designation of parking, and Equicor reasonably relied on the absence of any parking issue in processing its proposal. Under these circumstances, the Commission was estopped from asserting this deficiency as the reason for its disapproval of Equicor's plat."). Thus, the trial court's entry of summary judgment in favor of Castalia on the issue of priority was improper.

Having decided that the trial court improperly entered summary judgment in favor of Castalia on the issue of priority, we must determine whether Wells Fargo is entitled to summary judgment. Without citation to authority, Castalia asserts, "Wells Fargo also improperly asked for summary judgment to be granted in their favor on appeal when they did not file a motion for summary judgment or even a cross-motion for summary judgment at trial court. Wells Fargo seems to be treating this Court like a second chance at trial."[3] Appellee's Br. p. 14. Contrary to Castalia's assertion, "[w]hen any party has moved for summary judgment, the court may grant summary judgment for any other party upon the issues raised by the motion although no motion for summary judgment is filed by such party." Ind. Trial Rule 56(B).

---

[3] Although Wells Fargo did not file a cross-motion for summary judgment, in its memorandum in opposition of summary judgment, Wells Fargo asked the trial to court deny Castalia's motion and to rule in its favor on the issue of lien priority. See Supp. App. p. 542. Wells Fargo also requested that the trial court "find that Wells Fargo's Mortgages has [sic] priority as to the Real Estate . . . over any interest of Castalia in the Real Estate . . . ." Id. at 563.

Because Castalia is estopped from asserting that its mechanic's lien has priority over Wells Fargo's mortgages, Wells Fargo has established that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law on the issue of priority. Under these circumstances, Wells Fargo is entitled to summary judgment. See New Chicago, 939 N.E.2d at 657 (reversing the trial court's grant of partial summary judgment in favor of Lake Station and directing the trial court to enter summary judgment in favor of New Chicago on its equitable estoppel defense). We reverse and remand for the trial court to enter summary judgment in favor of Wells Fargo on the issue of priority and direct it to enter an order that Wells Fargo's mortgages take priority over Castalia's mechanic's lien with respect to the funds currently held in escrow from the sale of the property.[4]

**Conclusion**

Because Castalia is estopped from asserting that its mechanic's lien takes priority over Wells Fargo's mortgages, Wells Fargo is entitled to summary judgment on the issue of priority. We reverse and remand.

Reversed and remanded.

FRIEDLANDER, J., and MAY, J., concur.

---

[4] Because of our conclusion that Castalia is estopped from asserting that its mechanic's lien takes priority over Wells Fargo's mortgages, we need not address the parties' arguments regarding the validity of the mechanic's lien.

11